UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MARION P. DEMOSS, BARBARA J. GALYEN, and PATRICIA J. KELLEY, )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>TERRY L. KRETZ, GEORGE THORPE, )<br>and MICHAEL C. LYNN, )<br>)<br>Defendants. ) | Case No. 3:07-0405<br>Judge Trauger |

## MEMORANDUM AND ORDER

Pending before the court are defendant Lynn's and defendant Thorpe's Motions for Attorneys' Fees. (Docket Nos. 150 and 156, respectively.) For the reasons discussed herein, these motions will be denied.

## BACKGROUND

The plaintiffs, Marion P. DeMoss, Barbara J. Galyen, and Patricia J. Kelley, brought this action after they each lost a substantial amount of money investing with the now-bankrupt Hanover Corporation, LLC ("Hanover"). As discussed more thoroughly in the court's January 7, 2009 Memorandum (Docket No. 141), each plaintiff purchased a promissory note from Hanover for a cost ranging from $50,000 to $350,000 on Hanover's promises that it would pay the plaintiff a certain level of interest and that it would only invest in certain, relatively conservative, investment vehicles. Hanover did not abide by these promises and went bankrupt, costing the plaintiffs their investments. Asserting a substantial number of common law claims, along with state and federal statutory claims (primarily under the securities laws), the plaintiffs alleged that

1

the three individual defendants, Terry Kretz, Michael C. Lynn, and George Thorpe, were responsible for the plaintiffs' losses, as the defendants were all senior officials at Hanover.

In its Memorandum and accompanying Order, both dated January 7, 2009, this court granted the summary judgment motions of defendants Lynn and Thorpe. (Docket Nos. 141 and 142, respectively.) On summary judgment, these defendants demonstrated that they (1) had not had any relevant communication with the plaintiffs; (2) had not sold any securities and (3) were not "control persons" for the purposes of the securities laws. Despite the variety of claims asserted, these facts were largely sufficient to grant summary judgment for defendants Lynn and Thorpe on the plaintiffs' claims. The plaintiffs' case against defendant Kretz is still proceeding toward trial.

## ANALYSIS

After successfully defending the plaintiffs' claims in this case, defendants Lynn and Thorpe moved for attorneys' fees. The plaintiffs have opposed these motions.

**I.     Attorneys' Fees**

As discussed in the court's January 7, 2009 Memorandum, the plaintiffs asserted a substantial number of claims against the three defendants, including federal and state securities law violations and violations of state consumer protection acts. Under three of those claims, that is, the federal Securities Act of 1933, the Tennessee Securities Act, and the Tennessee Consumer Protection Act (TCPA), the party successfully defending the claim may, at the court's discretion, recover attorneys' fees. See 15 U.S.C. § 77k(e), T.C.A. § 48-2-122(f), and T.C.A. § 47-18-109(e)(2).

Defendants Lynn and Thorpe both seek the entire amount of their attorneys' fees in this

2

case ($90,455.03 and $96,132.79, respectively) under any or all of these three provisions. (Docket Nos. 150 and 156, respectively.) Indeed, Lynn and Thorpe argue that, because "the varied causes of action are so complex and interconnected," if the court finds that an award of attorneys' fees is appropriate under any of the provisions discussed above, it should award the full balance of those fees to Lynn and Thorpe, and the fees should either be assessed jointly and severally, or, in the alternative, each plaintiff should be ordered to pay 1/3 of the fees. (*See e.g.* Docket No. 151 at 7 and Docket No. 157 at 7.)

### A. The Relevant Statutory Provisions

Each statutory provision discussed above imposes slightly different requirements as to the finding the court must make before awarding attorneys' fees under the provision. First, under 15 U.S.C. § 77k(e), the court may award reasonable attorneys' fees in favor of the party successfully defending an action brought under the Securities Act of 1933 if "the court believes the suit ... to have been without merit." 15 U.S.C. § 77k(e). The Sixth Circuit has interpreted the phrase "without merit" to mean that the suit is, or borders on being, frivolous or that the suit was brought in bad faith. *Shaw v. Merritt-Chapman & Scott Corp.*, 554 F.2d 786, 788 (6th Cir. 1977).

Second, under T.C.A. § 48-2-122(f), the court may, "in its discretion," assess reasonable attorneys' fees against either party in a suit brought under the Tennessee Securities Act (TSA). T.C.A. § 48-2-122(f). While this provision does not explicitly require that the court find that the claim was "without merit" before attorneys' fees can be awarded to the party who successfully defended the TSA claim, Tennessee courts have been reluctant to impose attorneys' fees on an unsuccessful plaintiff where the plaintiff's claim under the TSA had "some legal basis." *See*

3

*DePriest v. 1717-19 West End Assoc.*, 951 S.W. 2d 769, 775 (Tenn. Ct. App. 1997).

Third, T.C.A. § 47-18-109(e)(2) provides that, "in any private action commenced under this section, upon finding that the action is frivolous, without legal or factual merit, or brought for the purpose of harassment, the court may require the person instituting the action to indemnify the defendant for any damages incurred, including reasonable attorney's fees and costs." T.C.A. § 47-18-109(e)(2). The Tennessee Court of Appeals has defined "without legal or factual merit" to mean "so utterly lacking in an adequate factual predicate or legal ground as to make the filing of such a claim highly unlikely to succeed." *Glanton v. Bob Parks Realty*, 2005 WL 1021559, *9 (Tenn. Ct. App. Oct. 24, 2005).

Clearly, despite the slightly different language in the three statutory provisions, to award attorneys' fees based on any of them, the court would have to find that the claims asserted were either frivolous, or tended toward being frivolous. While the provision permitting the award of attorneys' fees under the Tennessee Securities Act does not have the "without merit" language in the statute, the case law interpreting that provision has indicated that the court, before awarding attorneys' fees, should make some finding that the claim was evidently without legal basis, beyond what ordinarily would be revealed through discovery and summary judgment briefing, or at trial. *See e,g, DePriest*, 951 S.W. 2d at 775.

### B. Lynn's and Thorpe's Arguments

Asserting essentially identical arguments, defendants Lynn and Thorpe claim that they are entitled to attorneys' fees under each statutory provision discussed above. In their briefs, Lynn and Thorpe provide legal background and case law for each of the statutory provisions, and then argue that the plaintiffs never came forward with evidence that supported the allegations in

4

their Complaint.

For instance, Lynn and Thorpe argue that, to establish their Securities Act of 1933 claims in this case, the plaintiffs were required to show that these defendants either (1) "made a misstatement or omission of material fact in connection with the sale of a security"; (2) "s[old] or solicit[ed] the sale of an unregistered security"; or (3) were "control persons" who controlled the primary violator of the federal securities laws. (Docket Nos. 151 at 4-5 and Docket No. 157 at 5-6.) Instead of showing any of this, Lynn and Thorpe argue, "the plaintiffs provided no real factual proof to substantiate their claims ... . Instead, plaintiffs presented only speculation and weak inferences as purported evidentiary proof." (Docket No. 151 at 5-6 and Docket No. 156 at 6.) Therefore, according to Lynn and Thorpe, the Securities Act of 1933 claims were "without merit" for the purposes of 15 U.S.C. § 77k(e).

The argument is similar for the other two statutory provisions. Lynn and Thorpe argue that the plaintiffs were required to make a similar showing under the Tennessee Securities Act as under the Federal Securities Act of 1933, but, again, the plaintiffs "presented absolutely no evidence in support of their claims." (Docket No. 151 at 9 and Docket No. 157 at 9.) To succeed on the TCPA claim, Lynn and Thorpe contend that the plaintiffs would have had to show that Lynn and Thorpe engaged in "unfair or deceptive trade practices" toward the plaintiffs. (Docket No. 151 at 10 and Docket No. 157 at 9.) Again, Lynn and Thorpe argue, the plaintiffs were simply not able to put forth evidence of such practices. (Docket No. 151 at 11 and Docket No. 157 at 11.) Using the language from the *Glanton* case, Lynn and Thorpe argue that the lack of evidence of deceptive conduct means that the TCPA claims were "so utterly lacking in adequate factual predicate as to make the filing of the claim highly unlikely to

5

succeed," and, therefore, an award of attorneys' fees would be proper. (*Id.*)

Therefore, Lynn's and Thorpe's argument is essentially that discovery and summary judgment briefing demonstrated that the plaintiffs' claims under the Federal Securities Act of 1933, the Tennessee Securities Act and the TCPA were without evidentiary support. Indeed, Lynn concedes the fact that he was a senior officer at Hanover who signed two of the promissory notes in this case "might have" been an appropriate basis for his inclusion as a defendant in the initial Complaint, but, Lynn argues, the plaintiffs should have dismissed their claims against him once it became clear that the claims would be unsupported by the facts adduced in discovery. (Docket No. 161 at 3.) Similarly, Thorpe argues that "the plaintiffs should have withdrawn their claims against defendant Thorpe once it became apparent that there was no proof to establish them." (Docket No. 157 at 6.)

In support of the proposition that attorneys' fees should be assessed because the plaintiffs did not withdraw their claims, both Lynn and Thorpe focus on a single line of a 1986 case out of the Second Circuit. *See Zissu v. Bear Stearns & Co.*, 805 F.2d 75, 80 (2nd Cir. 1986). In *Zissu*, the Second Circuit determined that the district court correctly awarded attorneys' fees to the defendant who successfully defended the plaintiff's claims under the Federal Securities Act of 1933. *Id.* The court noted that, "if there ever has been a case involving frivolous or bad faith claims, it is this one," as the plaintiff's evidence was "replete with blatant contradictions and unsubstantiated allegations," was "confused and contradictory," and there was a strong possibility that the plaintiff testified falsely at trial. *Id.* (internal quotations omitted). The court noted that, "as a sophisticated investor," the plaintiff should have known his securities act claims were not viable before trial, and "these claims should have been withdrawn once it became plain

6

that there was no proof to establish them." *Id.* Ignoring the context of this sentence, Lynn and Thorpe argue that *Zissu* compels the conclusion that Lynn and Thorpe are entitled to attorneys' fees, because the plaintiffs did not withdraw their, ultimately unsupported, claims. (Docket No. 151 at 6 and Docket No. 157 at 6.)

The plaintiffs respond that, at the time they filed suit, they tried to identify those individuals at Hanover who appeared to have been in charge, including Michael Lynn, who was the Chief Operating Officer and who signed two of the promissory notes in this case on behalf of Hanover (Docket No. 154 at 2-5), and George Thorpe, who was held out by CEO Terry Kretz as Kretz's "right hand man" at Hanover and who was "intimately involved in the day-to-day operations of Hanover." (Docket No. 163 at 2-6, 13.) The plaintiffs argue that, based on each individual's high-level position at Hanover, "the plaintiffs did not frivolously file this lawsuit" against these defendants. (*See e.g.* Docket No. 154 at 6.) The plaintiffs also assert that, through discovery, they gamely developed evidence that Lynn and Thorpe were involved in the collapse of Hanover, further indicating that "the plaintiffs were nonetheless not frivolous for pursuing their claims ... ."[1] (See e.g. Docket No. 163 at 15-16.)

Consistent with the plaintiffs' arguments, the court believes that Lynn and Thorpe attempt to impose too great a burden on the plaintiffs. Plainly, and as Lynn concedes, given these defendants' apparent close affiliation with promissory notes that were not honored, it was

---

[1] The plaintiffs also argue that, even if the court were to find an award of attorneys' fees appropriate, Lynn's and Thorpe's claim for fees is unreasonable and "not supported by sufficient evidence," in part, because Lynn and Thorpe completely redacted the work descriptions on the attorney invoices that they submitted in support of their motions. (Docket No. 154 at 14 and Docket No. 163 at 16.) As the court will deny the motions on other grounds, it is not necessary to reach the plaintiffs' concerns about the specific fee requested.

7

not unreasonable or "frivolous" to name these defendants in claims that alleged false statements were made, deceptive practices were used, or securities were improperly sold. From that point forward, the plaintiffs were obviously entitled to conduct discovery and to attempt to develop their case. Unfortunately for the plaintiffs, the facts developed during discovery showed that Lynn and Thorpe, despite their high-level positions at Hanover, had no liability largely because they did not sell the notes, did not make any misrepresentations to the plaintiffs and were not in a position to control the securities violations of others.

But these conclusions, as Lynn essentially concedes, would not have been readily apparent at the time the plaintiffs filed suit. There is no indication that the plaintiffs were "sophisticated investors" with "inside knowledge" of the workings of Hanover. In short, the plaintiffs' claims are not frivolous simply because discovery and summary judgment briefing showed that these defendants were entitled to summary judgment.

The *Shaw* case, cited by both sides as the leading Sixth Circuit discussion of 15 U.S.C. § 77k(e), provides a useful contrast. *Shaw*, 554 F.2d at 788. There, the court affirmed the award of attorneys' fees against the unsuccessful plaintiff not merely because the plaintiff's evidence was insufficient but because "the district court characterized the plaintiff's conduct in the district court as 'most vexatious' and 'costly and burdensome to the named defendants and their respective counsel.' This suit represents [plaintiff's] third flawed attempt at stating a cause of action against essentially the same group of defendants. The line has to be drawn somewhere and we cannot hold the district court erred in finding [plaintiff's] action to be totally 'without merit' ... ." *Id.* Likewise, in the TCPA context, in the *Glanton* case, which Lynn and Thorpe argue supports their position because the court awarded attorneys' fees under the TCPA, the

8

court noted that the TCPA action was not only unsuccessful, but "the plaintiff asserted a [TCPA] claim based upon a section of the Act that does not apply ... and that prohibits conduct that is different from the conduct he alleged." *Glanton*, 2005 WL 1021559, at *10.

Further, contrary to Lynn's and Thorpe's assertions, the court does not view *Zissu* as stating that a plaintiff has an affirmative duty to withdraw claims that turn out, after discovery and summary judgment briefing, not to be meritorious. Rather, *Zissu* stands for the well-recognized proposition that frivolous and bad faith claims should not be asserted, and, under certain statutes, attorneys' fees may be awarded to the party who spent time and energy defending against those claims.

Here, whether the standard is described as "without merit," "without legal basis," or "utterly lacking in an adequate factual predicate," it is clear that, under these statutory provisions, to be entitled to attorneys' fees, the movant must do more than merely allege that the plaintiffs' claims were ultimately unsuccessful, or did not emerge from discovery with sufficient support to defeat a motion for summary judgment. Rather, some additional indicia of frivolity or bad faith must be shown. *See e.g. Shaw*, 554 F.2d at 788; *Glanton*, 2005 WL 1021559, at *10. Defendants Lynn and Thorpe have failed to make that showing. Indeed, Lynn and Thorpe are unable to point to any "costly and burdensome" tactics used by the plaintiffs or any unfair conduct at all. Rather, this simply appears to be a case in which the plaintiffs, each having lost a substantial amount of money, attempted to identify who was responsible and reasonably pointed to the individuals who ran the company that was responsible for the loss. That, ultimately, one or more of those individuals turned out not to be liable does not, under these provisions, entitle

9

these defendants to attorneys' fees.[2]

## ORDER

Therefore, for the reasons discussed above, the Motions for Attorneys' Fees of defendants Lynn and Thorpe (Docket Nos. 150 and 156 respectively) are denied.

It is so ordered.

Enter this 6th day of March 2009.

                                             ALETA A. TRAUGER
                                             United States District Judge

---

[2] As the court concludes that Lynn and Thorpe are not entitled to attorneys' fees, it is not necessary to consider their alternative argument that, even if the other plaintiffs are not liable, plaintiff DeMoss is liable for attorneys' fees related to the claims brought under the Tennessee Securities Act and the TCPA because plaintiff DeMoss resided in Tennessee and more clearly alleged violations of the Tennessee Securities Act and the TCPA than the other two plaintiffs. (*See e.g.* Docket No. 157 at 12-13.)